<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ZEV NEWMARK,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **AMERICAN EXPRESS COMPANY**, <br><br> Defendant. | Civil Action No. 20-10241 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

  **THIS MATTER** comes before the Court upon an Appeal of Magistrate Judge Decision ("Appeal", ECF No. 30) filed by Defendant American Express Company ("Defendant"). The Court will also consider the Motion to Enforce Settlement Agreement ("Motion", ECF No. 31) filed by Plaintiffs Zev and Yocheved Newmark (collectively, "Plaintiffs").

  The Court has carefully considered the parties' submissions and decided the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Defendant's Appeal and GRANT Plaintiffs' Motion.

**I.**  <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

  Plaintiff initiated this action on August 10, 2020, alleging that Defendant violated the Telephone Consumer Protection Act by placing unauthorized phone calls to the plaintiffs. Pursuant to a perceived settlement, Plaintiffs filed a Notice of Settlement on February 25, 2021, after which the Court entered a sixty-day order administratively terminating the case pending a

consummation of the settlement. (ECF No. 23.) On April 13, 2021, Plaintiffs filed a Motion for Reinstatement of the Case to the Active Docket due to the parties' inability to reduce their settlement to a written settlement agreement. (ECF No. 24.) The Court reinstated the case to the active docket on April 20, 2021. (ECF No. 26.) On May 11, 2021, Defendant filed a Motion to Appeal Magistrate Judge Decision. ("Appeal", ECF No. 30.) The Appeal challenges the Magistrate Judge's April 27, 2021 Order that held:

1. Plaintiffs' request for leave to file a motion to enforce settlement is granted. Such motion must be filed by May 14, 2021.
2. Defendant American Express Company's request to reinstate its motion to compel arbitration and motion to stay action (ECF No. 16) is denied without prejudice pending resolution of Plaintiffs' motion to enforce settlement.

(ECF No. 29.) Defendant appeals these terms "on the basis that they are clearly erroneous and contrary to binding precedent by assigning less priority to [its] right to arbitrate asserted six months ago than it does to Plaintiff's [sic] new (meritless) request to enforce a non-existent settlement." (Appeal at 2.) On June 7, 2021, Plaintiffs filed a response to the Appeal ("Appeal Response", ECF No. 36) arguing that Defendant's appeal is premature and frivolous in light of the enforceable settlement agreement and that Defendant abandoned its arbitration right by agreeing to a settlement prior to arbitration. (*See generally,* Appeal Response.) On May 14, 2021, Plaintiffs filed a Motion to Enforce Settlement Agreement. ("Motion", ECF No. 31.)

The parties' purported settlement began on or about November 17, 2020, when Plaintiffs' counsel initiated settlement negotiations by offering to dismiss their claims against Defendant in exchange for debt waiver and tradeline deletion for Plaintiffs' American Express ("AMEX") accounts. (Motion at 1.) Further settlement discussions ensued, which took place over e-mail between counsel. (*Id.*) Plaintiffs contend that the e-mails that were exchanged constituted a settlement agreement with respect to the five accounts that were the subject of the TCPA claims

2

in their Complaint.[1] (*Id.* at 3.) According to Plaintiffs, the only point of dissension was after they had inquired about adding a sixth account to the settlement. (*Id.* at 4.)

On June 7, 2021, Defendant filed its Response to Plaintiffs' Motion. ("Response to Motion", ECF No. 35.) In its Response, Defendant disagrees with Plaintiffs' interpretation of the e-mails and instead argues that there was no "meeting of the minds" to create an enforceable contract because Plaintiffs wanted to include a sixth account in the settlement agreement that Defendant never accepted. (Response to Motion at 11.) Defendant further argues that material terms of the settlement agreement were not agreed upon (*id.* at 14), that Plaintiffs cite case law that does not support their position (*id.* at 18), that Defendant did not make a counteroffer when discussing the sixth account (*id.* at 22), and the Notice of Settlement does not constitute acceptance by performance (*id.* at 26).

On June 14, 2021, Plaintiffs Replied to Defendant's Response to Motion ("Reply to Response", ECF No. 38) and reiterated that an enforceable agreement exists as to the five accounts (Reply to Response at 1) and that missing minor details with respect to the settlement terms does not preclude the formation of a binding and enforceable settlement agreement (*id.* at 7).

**II.      DISCUSSION**

    **A.      APPEAL OF MAGISTRATE JUDGE DECISION**

"A United States Magistrate Judge may 'hear and determine any [non-dispositive] pretrial matter pending before the court.'" *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a). This Court exercises appellate review over the orders of Magistrate Judges pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Civil Rule 72.1(c). "On appeal

---

[1] These are the accounts ending in 1001, 1003, 1009, 2009, and 3002.

from such an order, the scope of this Court's review is narrow." *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 236 (D.N.J. 2022). Matters referred to a Magistrate Judge pursuant to 28 U.S.C. § 636(b) are subject to two standards of review: (1) a clearly erroneous or contrary to law standard for non-dispositive matters, and (2) a *de novo* standard for dispositive matters. *NLRB v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992). A ruling is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A ruling is 'contrary to law' when the magistrate judge has misinterpreted or misapplied the applicable law." *Allen*, 340 F.R.D. at 236. The burden is on the party who filed the appeal. *Id*. at 237. In this case, the parties agree that the challenged Order is a non-dispositive one and therefore subject to the "clearly erroneous or contrary to law standard." AMEX, as the appealing party, has the burden.

In this case, after a dispute had arisen as to whether an enforceable settlement agreement had been made, the parties requested the Court's intervention either by scheduling a hearing or a settlement conference. The Magistrate Judge held a teleconference in which both sides explained their respective positions. Based on the representations that were made at this conference and based on the filings made as heretofore explained above, the Magistrate Judge, by Order dated April 27, 2021, granted Plaintiffs' request to file a Motion to Enforce the Settlement and denied without prejudice Defendant's competing request to reinstate its pending Motion to Compel Arbitration (and to Stay the Case pending that decision) until after the resolution of Plaintiffs' Motion. (ECF No. 29.)

Defendant argues on appeal, as it did before the Magistrate Judge, that the Court must first resolve whether its arbitration agreement with Plaintiffs incorporates not just Plaintiffs' claim in

their Complaint, but also the parties' present settlement-related dispute. (Moving Br. at 4–5.) In support, it cites authority for the general proposition that, under the FAA, arbitration agreements must be placed on "equal footing" with other contracts. (*Id*. at 6.) Plaintiffs counter that this appeal is premature, and that Defendant's challenge should have been made after the Court ruled on the Motion to Enforce Settlement. (Opp. at 5–9.) They also argue that Defendant waived its arbitration rights by pursuing settlement negotiations in the context of this suit and by agreeing to material settlement terms prior to arbitration. (Opp. at 9–15.)

Having reviewed the authority cited by Defendant, the Court does not reach Plaintiff's counter-arguments because it is clear that Defendant has not met its burden on this appeal. The general proposition that arbitration agreements are to be afforded the same deference as other contractual provisions does not support its position that it is entitled to a decision on its Motion to Compel Arbitration prior to the Motion to Enforce Settlement. To be fair, it might be a valid alternative to consider the motions in the sequence that Defendant prefers,[2] but on this appeal it is Defendant's burden to establish that the Magistrate Judge's decision was either clearly erroneous or contrary to law. Defendant has failed to do so.

Therefore, the Court concludes that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law and, accordingly, it will be affirmed.

---

[2] While the Court's decision to deny the appeal rests on Defendant's failure to meet its relatively high burden, it notes that at least one Third Circuit decision, albeit in another context, has broadly acknowledged that a "settlement agreement is itself a contract, separate and independent from the dispute giving rise to the lawsuit that it settled," which is "in accord with the general principles governing settlement agreements, since a settlement agreement extinguishes those legal rights [which the party] sought to enforce through litigation in exchange for those rights secured by the contract." *Cooper-Jarrett, Inc. v. Central Transport, Inc*., 726 F.2d 93 (3d. Cir. 1984). This language runs counter to Defendant's theory that the parties' settlement dispute is encompassed by the parties' arbitration agreement.

### B. MOTION TO ENFORCE SETTLEMENT

The Court has jurisdiction to enforce a settlement agreement entered into by parties in a case currently pending before it. *See McCune v. First Judicial Dist. Of Pa. Probation Dep't*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000). A settlement agreement is binding once the parties express mutual assent to its terms and conditions. *See Main Line Theatres, Inc. v. Paramount Film Distrib. Corp.*, 298 F.2d 801, 803 (3d Cir. 1962). A settlement agreement need not be reduced to writing to be enforceable. *See Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir.1970). That a party experiences a change of heart after a settlement agreement has been reached will not invalidate the agreement. *See McCune*, 99 F. Supp. 2d at 566; *see also Good v. Pennsylvania R.R.*, 384 F.2d 989, 990 (3d Cir.1967) ("The obligation to remain bound by a valid agreement of settlement duly entered into by counsel with the authority of his client is one which pervades the law.").

The construction and enforcement of settlement agreements is governed by principles of New Jersey contract law. *Plymouth Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of Chicago*, 378 F.2d 389, 391 (3d Cir. 1967); *Pacific Alliance Grp. Ltd. v. Pure Energy Corp.*, Civ. No. 13-4592, 2006 WL 166470, at *2 (D.N.J. Jan. 23, 2006). "The burden is on the moving party to establish that the parties entered into a contract of settlement." *LNT Merch. Co. v. Dyson, Inc.*, Civ. No. 08-2883, 2009 WL 2169236, at *2 (D.N.J. July 21, 2009) (citing *Amatuzzo v. Kozmiuk*, 305 N.J. Super. 469, 475 (App. Div. 1997)); *United States v. Lightman*, 988 F. Supp. 448, 458 (D.N.J. 1997).

Generally, New Jersey public policy favors settlements of litigation. *Longo v. First Nat. Mortgage Sources*, 523 F. App'x 875, 878, (3d Cir. 2013); *Nolan by Nolan v. Lee Ho*, 120 N.J. 465, 472 (1990). Notwithstanding the policy favoring settlements, "courts will not enforce a

settlement 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *Id*. (quoting *Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987)).

In order to have an enforceable settlement or contract there "must be a 'meeting of the minds' for each material term to an agreement." *Pacific Alliance Grp.*, 2006 WL 166470 at *3 (citing *Sampson v. Pierson*, 140 N.J. Eq. 524 (N.J. Ch. 1947)). "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract." *Knight v. New England Mut. Life Ins. Co.*, 220 N.J. Super. 560, 565 (App. Div. 1987) (citation omitted). Where the parties do not agree to one or more essential terms, courts generally hold that an agreement is unenforceable. *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992)).

Objective manifestations of intent are controlling when determining whether there was a meeting of the minds. *See Brawer v. Brawer*, 329 N.J. Super. 273, 283 (App. Div. 2000) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."); *Leitner v. Braen*, 51 N.J. Super. 31, 38 (App. Div. 1958) ("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former."). "Where there is a misunderstanding between the parties pertaining to one of the material terms of an agreement, there is no meeting of the minds, and therefore no contract." *Pacific Alliance Grp.*, 2006 WL 166470 at *3; *see also D.R. by M.R. v. East Brunswick Bd. of Educ.*, 838 F. Supp. 184, 191–92 (D.N.J. 1993) ("a contract cannot be made when there has been no common

7

understanding and mutual assent to the terms of a contract."); *Big M, Inc. v. Dryden Advisory Grp.*, Civ. No. 08-3567, 2009 WL 1905106, at *22 (D.N.J. Jun. 30, 2009) (finding no meeting of the minds where the parties did not attach the same meaning to a contract term).

Here, the parties disagree as to whether an exchange of emails agreeing to terms constitutes an enforceable settlement agreement. On November 17, 2020, Plaintiffs' counsel started settlement negotiations by offering debt waiver and tradeline deletion—the pertinent material terms—for Plaintiffs' AMEX accounts, in exchange for dropping Plaintiffs' claims against AMEX. (Motion Ex. B, email dated 11/17/2020.) Plaintiffs' counsel later clarified that this "would be for a full resolution of the entire matter" against AMEX. (*Id.*, email dated 12/07/2020.) After it became clear to Defendant that the "magnitude of the balance waiver" required "AmEx . . . to conduct an investigation into the allegations here and run this up the flagpole," (*id.*, email dated 12/17/2020; 01/23/2021), its counsel eventually accepted Plaintiffs' proposed resolution of this case by email dated February 25, 2021.[3] Its counsel cemented this understanding by replying, "[w]e will get started on a draft agreement for your review. In the interim, can your office file a notice of settlement to get next week's conference off calendar?" A notice of settlement was subsequently filed with the court on February 25, 2021. ("Notice of Settlement", ECF No. 22.)

Plaintiffs' counsel followed up this exchange with an email requesting a list of the accounts and associated balances that would be covered by the settlement agreement, and Defense counsel responded, "sorry, it's actually five accounts" and then listed the five accounts that were in issue. (*Id.*, email dated 02/25/2021.) Plaintiffs' counsel responded by once again confirming the relevant, material terms of the agreement: "[c]onfirming the account below balance waiver, tradeline

---

[3] Email from Defendant's counsel to Plaintiffs' counsel: "[Counsel] - We just got confirmation that the business accepted plaintiffs' demand for a balance waiver and tradeline deletion across Yocheved's four business accounts in exchange for settlement of the claims against AmEx and RSIEH."

deletion, [and] we file notice of settlement." (*Id.,* email dated 02/25/2021.) Defendant's counsel responded succinctly by stating, "[c]orrect, balance waivers and tradeline deletions. Thanks." (*Id.,* email dated 2/25/2021.)

On March 1, 2021, Plaintiffs' counsel inquired about resolution of a potential sixth account (*id.*, email dated 03/01/2021), but Defendant's counsel reiterated his understanding that the account was not to be included in the settlement agreement because it was not covered under the terms of the original agreement, and second, because it was not amongst the five accounts that were the subject of Plaintiffs' TCPA claims (*id.*, email dated 04/04/2021).

New Jersey courts have consistently found that an exchange of e-mails can create an enforceable agreement. *See, e.g., Triffin v. Sunrise Banks*, No. A-3445-14T1, 2017 WL 1337538, at *5 (App. Div. Apr. 12, 2017) (finding that the chain of e-mails between the parties provided compelling evidence that the parties reached an enforceable settlement); *Trian Group, LP v. Accident & Cas. Ins. Co.*, Civ. No. 98-1026, 2006 WL 1784310, at *5 (D.N.J. Jun. 6, 2006) ("[t]he e-mail exchange between counsel on December 2, 2005[,] clearly reflects that, on that date, the parties had an agreement-in-principle.")

Here, on a careful review of the parties' communications, it is clear that an enforceable settlement exists with respect to the five accounts and balances enumerated in the e-mail dated February 25, 2021.[4]  Although this agreement was not reduced to writing, it is nevertheless enforceable because there was a meeting of the minds as to the material terms and conditions— namely, debt waiver and tradeline deletion for Plaintiffs' AMEX accounts in exchange for dropping Plaintiffs' claims against AMEX.

---

[4] These are the accounts ending in 1001, 1003, 1009, 2009, and 3002.

9

This is consistent with similar cases that have considered this issue in both state and federal courts.  In *Trian Group*, when considering whether an e-mail chain created an enforceable settlement agreement, the court held that an email explaining "[t]he framework of the settlement is [the agreed-upon] payment, in exchange for a release of all known claims" constituted an understanding of the essential terms.  *Id.* at * 4.  Similarly, the court in *Triffin* held that a settlement agreement discussed over email was enforceable because the essential terms of the settlement agreement—that the plaintiff would dismiss his claims against defendants in exchange for $6,000—were agreed to on the date the email was sent.  2017 WL 1337538 at * 4.

Defendant's argument that there is no enforceable agreement because the parties had not agreed on all of the possible terms, is unpersuasive. [5]  Courts regularly hold that not every term needs to be agreed upon to have an enforceable agreement, only the material ones.  In fact, "the unresolved terms, such as the precise language of the release, [a]re just 'the mechanics' which could be 'fleshed out' in a writing to be thereafter executed and do not render the settlement agreement unenforceable."  *Id.* (quoting *Bistricer v. Bistricer*, 231 N.J. Super. 143, 145 (Ch. Div. 1987)).  Lastly, Defendant's rejection of the sixth account as part of the settlement does not invalidate the parties' agreement with respect to the first five accounts.  *See McCune*, 99 F. Supp. 2d at 566.  For these reasons, the Court will grant Plaintiffs' Motion to Enforce Settlement Agreement.

---

[5] In reaching this conclusion, the Court in particular rejects Defendant's argument that because Plaintiffs stated that they "need" preferable tax treatment, this somehow converted the tax treatment into a material term.

### III.     CONCLUSION

For the reasons stated above, the Court will DENY Defendant's Appeal of Magistrate Decision and GRANT Plaintiffs' Motion to Enforce Settlement Agreement. An appropriate Order will follow.

Date: **November 30, 2022**

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**